W. F. MASON *et al.* *v.* E. A. O'BRIEN *et al.*

1. ATTACHMENT FOR RENT : PERSONAL PROPERTY EXEMPT, NOT LIABLE TO, BUT DESCENDS ON DEATH OF OWNER TO WIFE AND CHILDREN. — Personal property exempt from execution, on the death of the husband, descends to

the widow and children, and vests absolutely in them without any condition, limitation, or restriction as to their right, and is free from sale under execution or attachment for rent.

2. PERSONAL PROPERTY: DESTRUCTION OF, AFTER CONVERSION. — A party, who wrongfully converts personal property to his own use, is liable to the true owner for the value thereof, though the property subsequent to the conversion was destroyed by the public enemies or otherwise.

3. PROPERTY EXEMPT FROM EXECUTION DESCENDS TO WIDOW, WHETHER ESTATE BE SOLVENT OR INSOLVENT. — Personal property exempt from execution descends to the widow and children exempt from the debts and liabilities of the husband, whether the estate of the husband be solvent or insolvent. *Coleman* v. *Brooks,* 37 Miss. 71; *Whitley* v. *Stephenson,* 38 ib. 113; *Walley* v. *Walley,* 41 ib. 657.

ERROR to the Circuit Court of Marshall county. Hon. Alexander M. Clayton, judge.

Charles O'Brien, a dentist in Holly Springs, rented a room for the practice of his profession, from W. F. Mason, one of the plaintiffs in error. During the existence of the lease, in the year 1860, O'Brien died. After his death, Mason gave notice to an agent of defendants in error that O'Brien was indebted to him for rent of his office, and that he intended to hold the dental instruments to secure him, and did not wish them removed from the room occupied by him. J. R. McCarroll, one of the plaintiffs in error, administered upon O'Brien's estate, and obtained from Mason, who had received from one Farrell the key to O'Brien's office, possession of the dental instruments. Defendants in error demanded from Mason and McCarroll the dental instruments, but they refused to deliver them until the rent was paid. In 1863, while the dental instruments were in the possession of plaintiffs in error, they were destroyed or taken away by the Federal troops.

Defendants in error claimed the dental instruments as being exempt from execution and attachment for rent, and that they, upon the death of Charles O'Brien, descended to them as his widow and children. In 1866, defendants in error brought their action of trover against plaintiffs in error, to recover the value of the dental instruments. Jury and verdict for defendants in

error. Writ of error to this court. The errors assigned will be found in the opinion of the court.

*Featherson, Harris & Watson* for plaintiffs in error.

The first error assigned is, that the verdict of the jury is excessive, and wholly unsupported by the evidence.

The second error assigned is, that the court below erred in giving the charges for the plaintiffs.

The first charge is erroneous. There are no exemptions of a tenant's property from the landlord's claim for rent. See Rev. Code, p. 339, which clearly embraces property exempt from sale under levy and execution. Even any interest or limited property the tenant may have in any goods or chattels on the premises, is liable to distress for rent. Ib., p. 342, art. 12. And this claim of the landlord constitutes a lien paramount to all other claims or liens. Ib., p. 531, art. 288; *Canterbury* v. *Jordan,* 27 Miss. 96; *Prewett* v. *Dobbs,* 13 S. & M. 431.

But it is insisted by counsel for defendants in error that upon the death of Charles O'Brien the property belonging to him which was exempt from levy and sale under execution descended to and vested in his widow and children. Let this be conceded; but unless the provisions of the acts above cited change the status of the property so descending, the widow and children take only such title as the deceased ancestor had in the same, and they take it subject to all the liens and incumbrances resting on it. The arts. 172, p. 469, and 281, p. 529, Rev. Code, do not repeal an act entitled "An Act in relation to Landlord and Tenant," Rev. Code, p. 339, either constructively or otherwise; but by a proper interpretation they harmonize.

The property exempt from execution in the hands of the husband is also exempt in the hands of his widow and children, but under the above-cited articles in neither case is it exempt from a distress for rent.

But art. 294, p. 552, Rev. Code, clears up the whole matter, and explicitly and distinctly states that nothing contained in the exemption acts applies to a distress for rent.

*Stith, Upshaw & Falconer* for defendants in error.

Three leading points are presented by this record, upon each of which we claim that the defendants in error are entitled to an affirmance of the judgment of the court below.

1st. Is the personalty exempted by law from execution or attachment, exempt from an *attachment for rent?*

2d. If not exempt in the lifetime of the tenant, yet, if no attachment be sued out in his lifetime, does not the exempt personalty descend to the widow and children of the deceased tenant, free from liability to seizure for rent?

3d. If liable in both events, in a proper case, yet do the plaintiffs in error here bring themselves within the law so as to make such defence available, or had Mason lost his remedy, and consequently his lien as landlord?

As to the first point, the well-established rule of construction *in pari materia,* applies. In lieu of the common-law distress for rent, our legislature has substituted what is termed an "attachment" for rent. Rev. Code, p. 339; *Canterbury* v. *Jordan,* 27 Miss. p. 96.

Under the art. 280, pp. 528–9, certain articles are exempt "from *seizure* under execution or *attachment;*" now when it is remembered that an "attachment" has been substituted for distress, and that the word "seizure" is used instead of "levy," it is evident that it was intended to embrace the idea of *seizure* or distress for rent; and the word "attachment" is used without limit or restriction. In the Rev. Code, art. 284, p. 530, certain cases are enumerated wherein the exempted property previously mentioned shall not be exempt, and the case of a *distress for rent is not mentioned.* The reason of this, the opposite counsel contend, is, that the language of art. 280, p. 529, does not contemplate at all a distress for rent. Art. 284 even goes *farther,* and includes a sale of property for non-payment of taxes. The plaintiffs in error cite with confidence art. 294, p. 532, Rev. Code. This clearly applies to the subdivision of the chapter at the conclusion of which it is placed. *Vide* 6 Bac. Ab., p. 382. Otherwise, many difficulties, embarrassments, and contradictions would arise throughout the whole of that

chapter. Is not a distress for rent an execution? *Canterbury* v. *Jordan*, 27 Miss. 96. And when the statute exempts certain property from *execution* or *attachment*, does it not in terms embrace *distress for rent?*

Does not the word "housekeepers," in art. 280, plainly include tenants?

As it is clearly evident that art. 294, p. 532, Rev. Code, does not and cannot apply to the whole chapter, it must be confined to its own subdivision, or have such reasonable construction as, in view of all the legislation on the subject, will best convey and carry out the true intent of the legislature, and give effect to every part of such legislation; and it is quite obvious that the whole tenor of the chapter is in support of the construction we place upon it.

If by the above-cited art. 280 an attachment *for rent* was not intended, there was no need for the word "attachment" at all; for an ordinary attachment being a suit, judgment must first be rendered and *execution* issued.

The distinction is plain when we refer to art. 281, p. 529, Rev. Code. It is contended that the language of chap. 41 of the Revised Code is broad and comprehensive, and contains no exemptions. In answer to this, we would cite art. 4, p. 373, Rev. Code, which is equally as sweeping; and who questions the application of the exemption laws to this? But we rely not on the ordinary or any rules of construction. To place the whole matter beyond dispute, we refer to art. 172, p. 469, Rev. Code. If none of the personal estate is exempt from distress, why does it say "*all* the personal estate of her deceased husband which is *by law* exempted from sale under execution or *distress*"? How is this, if nothing in fact was exempted from *distress?* What *law* does it refer to, but the provisions set forth in the same chapter? *Vide Whitley* v. *Stephenson*, 38 Miss. 115; *Coleman* v. *Brooks*, 37 Miss. 71.

If nothing is exempted from *distress* by art. 280, we look in vain in the Code for such exemption; and consequently the word "distress" in art. 172, p. 469, amounts to nothing, and is

a mere nullity; which it cannot be. See 6 Bac. Abr. 380, 381, 382, 385.

In support of the views above advanced, see *Mosely* v. *Anderson*, 40 Miss. p. 49 ; Acts of 1865, pp. 137–9. The second point on which an affirmance of the judgment is claimed, and which is stated at the outset, is answered conclusively by a plain and reasonable construction of art. 172, p. 469, Rev. Code. It is plainly meant for the protection of the widows and the fatherless; and give art. 294, p. 532, Rev. Code, the broadest construction, still it cannot, nor does it apply to art. 172, for both are *in different chapters or "acts."*

See also Acts, 1859, p. 375, where the personalty goes to the children of deceased, " discharged of any *liability*," etc.; a very comprehensive term, including liabilities for rent, or anything else.

It is maintained by the opposite counsel that we cannot maintain an action for exempt personalty *till it has been set apart by appraisers*. This is erroneous. *Whitley* v. *Stephenson*, 38 Miss. 115 ; *Coleman* v. *Brooks*, 37 Miss. 71. The widow and children " shall be allowed to retain and hold it."

Mason never did distrain, had he been entitled to. His *right* to distrain had expired before demand was made of him for the property. A person cannot distrain on his own premises, when he is in possession himself, and can only do so during possession or *seizin* of the tenant. " If a landlord *neglect to distrain*, he can only come in *pro rata* with the other creditors." 3 Co. Lit. 364, n. ; 1 Abk. 102, 103.

The second charge given for the plaintiffs below was correct. See 3 Rob. Prac. 462 ; *Hoover* v. *Alexander*, 1 Bailey, 510 ; 2 Greenleaf's Ev. § 642 and note 2; and ib. § 644; *Trotter* v. *White*, 26 Miss. 92.

The third charge given for plaintiffs is thoroughly sustained by various authorities.

PEYTON, J., delivered the opinion of the court.

This was an action of trover instituted in the Circuit Court of Marshall county by Elizabeth A. O'Brien, widow of

Charles O'Brien, deceased, and Charles O'Brien, Henry O'Brien, and Franklin P. O'Brien, infant children of Charles O'Brien, deceased, by their next friend, Elizabeth A. O'Brien, against William F. Mason and John R. McCarroll, to recover the value of a dentist's lathe and a set of dental instruments.

The proof shows that Charles O'Brien, who was a dentist by profession, departed this life in the fall of the year 1860, intestate, and in possession of the property in controversy. That at the time of his death he was indebted to the said William F. Mason in the sum of about two hundred and fifty dollars, for rent of a room in his house. That defendant John R. McCarroll was administrator of the estate of the said Charles O'Brien, deceased, and that the dental instruments had come to the possession of the defendants, and that the same had been demanded from defendants before the institution of the suit, and had been refused to the plaintiffs. To this action the defendants interposed the plea of not guilty, and upon this plea the cause was submitted to a jury, who found a verdict for the plaintiffs for the sum of $281. The defendants then moved the court for a new trial, which motion was overruled by the court, and judgment was rendered upon the verdict in favor of the plaintiffs against the defendants, who bring the case into this court by writ of error, and make the following assignments of error:

1. The verdict is excessive, and wholly unsustained by the evidence.

2. The court erred in giving the charges asked by the plaintiffs in the court below, and in refusing that asked by the defendants in the court below.

The principal question presented by this record for our consideration, which has been argued with great ability by counsel on both sides, is, whether property exempt from execution and attachment is liable to be seized under attachment for the payment of rent.

In the examination of this interesting question we shall first take into consideration the second assignment of error, which involves the propriety of the action of the court in giving to the

jury the instructions asked by the plaintiffs, and in refusing that asked by the defendants.

In the first instruction given for the plaintiffs, the court charges the jury that if they believe from the evidence Charles O'Brien, the husband of one and father of the other plaintiffs, was a dentist by profession, and that the instruments in controversy were the property of said O'Brien at his death, and the plaintiffs are the widow and children of said decedent, then the property in said instruments, to the value of two hundred and fifty dollars, vested in the plaintiffs upon the death of said decedent, discharged from any liability for the debts of the deceased or for rent due by him.

This instruction propounds the law correctly. The statute provides that the instruments of surgeons and dentists, used in their profession, not exceeding two hundred and fifty dollars in value, shall be exempt from seizure under execution or attachment. Rev. Code, 528, art. 280. And it is further provided that the widow shall be allowed to retain and hold to her own use all the personal estate of her deceased husband which is by law exempted from sale under execution or distress, and may hold the same free from sale under execution or distress, for *any debt* contracted by her said husband. Rev. Code, 469, art. 172. This statute was amended by the Act of 1860, which provides that the widow and children shall take the exempt property jointly. Pamphlet Acts of 1860, p. 375.

It has been decided by this court that the widow and children of the deceased are entitled to all his personal estate which is exempted by law from his debts and liabilities, and that this property upon his death descends directly to the widow and children, and vests absolutely in them, by operation of law, without any condition, limitation, or restriction as to their right to the same. *Wally* v. *Wally*, 41 Miss. 659.

This adjudication fully sustains the action of the court in refusing to give the instruction asked by the defendants.

Is there anything in the nature of Mason's demand for rent which relieves it from the operation of this general law? We think there is not. It is specially provided that no property

shall be exempt from execution when the purchase-money thereof forms, in whole or in part, the debt on which the judgment is founded, nor shall any property be exempt from sale for non-payment of taxes or assessments, or for any labor done thereon, or materials furnished therefor. Rev. Code, 530, art. 284.

Had the debt of the landlord been one of the favored claims, it would in all probability have been inserted in this article, and the failure of the legislature to do so furnishes a strong presumption that the claim is subject to the general rule with respect to exempt property.

The common doctrine of distress for rent having been repealed by statute, constitutes no part of our system of jurisprudence. Instead of proceeding by distress as at common law, the statute provides that for the recovery of rent in arrear the proceeding shall be by attachment, which is simply a mandate, in the nature of an execution for a money demand, which is intended to be executed without the intervention of the court, unless the debt or demand itself be disputed by the tenant. *Towns* v. *Boarman,* 23 Miss. 186.

When the terms "distress for rent" occur in the adjudications of this court, as they do in the case of *Canterbury* v. *Jordan,* 27 Miss. 96, they invariably mean a proceeding by attachment since the adoption of the Code of 1857.

The second instruction given for the plaintiffs is as follows: If the jury believe from the evidence that the property in controversy was the property of the plaintiffs, and that said property came to the possession of defendants, and that the plaintiffs by themselves or their agent demanded the possession of the property, and defendants refused to give it up, this amounts to a conversion, and fixes the liability of the defendants ; and the subsequent destruction of the property by the public enemy or otherwise cannot relieve them from such liability, and they must find for the plaintiffs. There is no error in this instruction.

The third instruction on the part of the plaintiffs is as follows: Property exempt from execution descends to the widow and

children, exempted from the debts and liabilities of the deceased, whether his estate be solvent or insolvent. This instruction is in accordance with the decisions of this court. *Coleman* v. *Brooks*, 37 Miss. 71; *Whitley* v. *Stephenson*, 38 Miss. 113; and *Wally* v. *Wally*, 41 Miss. 659.

Having disposed of the second assignment of error, we come now to consider the first assignment of error, which is, that the verdict is excessive, and wholly unsustained by the evidence.

Joseph H. Farrell testified on the part of the plaintiffs that the dental instruments were worth from three to six hundred dollars.

Dr. S. P. Cutler testified that the dental instruments, the property in controversy, were appraised at less than two hundred dollars, and did not think them worth that sum.

John R. McCarroll testified that he did not think the dental instruments in controversy were worth more than one hundred and thirty or forty dollars. It thus appears that there was some conflict in the testimony as to the value of the property in controversy. It was the province of the jury to determine the value of the property from the testimony, and to render a verdict for the plaintiffs for that value, in case it should not exceed two hundred and fifty dollars, with interest thereon from the time of the conversion. We cannot say from the testimony that the verdict is excessive, and unsustained by the testimony, and will not therefore disturb it.

The judgment will be affirmed.